UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:

      Lori Cersosimo,

                      Debtor.
-----------------------------------------------------------X

Chapter 7

Case No.:    05-89735-dte

Marc A. Pergament, Chapter 7 Trustee of the
Estate of Lori A. Cersosimo,

                      Plaintiff,

-against-                                          Adv Pro. No:  07-08145-dte

Eugenio Cersosimo,

                      Defendant.
-----------------------------------------------------------X

## AMENDED MEMORANDUM DECISION

*Appearances:*

Marc A. Pergament, Esq.
Weinberg Gross & Pergament LLP
*Attorney for the Plaintiff*
400 Garden City Plaza
Garden City, New York 11530

Bernard A Nathan, Esq.
*Attorney for the Defendant*
325 Wireless Boulevard
Hauppauge, NY 11788

Honorable Dorothy Eisenberg, United Stated Bankruptcy Judge

Lori A. Cersosimo (the "Debtor") filed for Chapter 7 bankruptcy protection on October 15, 2005. Thereafter Marc A. Pergament, Esq. was appointed as the Chapter 7 Trustee (the "Trustee" or the "Plaintiff") of the Debtor's bankruptcy estate. Prior to her bankruptcy filing, the Debtor and Eugenio Cersosimo (the "Defendant"), her now ex-husband, had entered into a divorce settlement agreement (the "Agreement") on February 9, 2001, which governed what each spouse would receive upon the entering of a divorce decree. The State Court entered the judgment of divorce on December 21, 2001. One of the conditions of the Agreement was that the Debtor would transfer her interest in the marital residence to the Defendant (the "Transfer"). The Trustee filed the instant adversary proceeding on April 13, 2007, seeking to have the Transfer declared a fraudulent conveyance, and requests that it be set aside, or, in the alternative, award the Plaintiff damages as a result of the Transfer. A trial was held before the Court over a two day period, from November 20, 2008 to November 21, 2008, and the parties were authorized to submit post-trial findings of fact and conclusions of law.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND

The Debtor and the Defendant were married in 1983. Together they purchased the real property located at 211 Michigan Avenue, Port Jefferson, New York (the "Premises"). The Debtor and the Defendant had a son and a daughter. After over 16 years of marriage, there came a point in 1999 when the Debtor and the Defendant began to have marital difficulties and she left their home.[1]

---

[1] The Debtor first went to a women's shelter in Suffolk County for three months. After leaving the women's shelter, the Debtor ultimately ended up renting an apartment in Port Jefferson, New York.

2

The Debtor commenced a divorce proceeding against the Defendant in 1999, and the parties entered into the Agreement on February 9, 2001. The Agreement was adopted into the Judgment of Divorce that was entered by the State Court on December 21, 2001. At the time of their divorce, the Debtor was employed as an administrative assistant, and the Defendant was employed as assistant professor at the University of Stony Brook.[2] He was also a medical doctor and a research physician.

The Agreement governed the distribution of the martial property, as well as established which spouse would be responsible for certain debts and costs, and the custody of the children.[3] One component of the Agreement was that the Defendant would receive the Debtor's interest in the Premises (the "Transfer"),[4] however the Debtor would be allowed to live at the Premises with their children. The Defendant was required to move out.[5] The deed evidencing the Transfer was executed on January 22, 2002, and the face of the document does not state what consideration was given. The Agreement further states that the Defendant would refinance the Premises, and upon the subsequent sale of the Premises, the Defendant would receive all of the sale proceeds.

In the Joint Pre-trial Memorandum the parties stipulated that the value of the Premises on the date of the Agreement was $265,000.00, and the value on the date of the transfer was $290,000.00. Furthermore, the parties agreed that the Premises were encumbered by the following: (1) a first mortgage with an unpaid balance of $167,360.79; (2) a second mortgage

---

[2] However, at the time the parties entered into the Agreement the Debtor was unemployed.
[3] Both the Debtor and the Defendant represented in the Agreement that they were in good health, employed and were self-supporting, and thus "hereby releases and discharges the other absolutely and forever for the rest of his or her life from any and all claims and demands past, present and future for support and maintenance."
[4] The Agreement provides, in relevant part, that "The WIFE agrees to waive all right, title and interest she may have in the marital residence and further agrees to execute a bargain and sale deed contemporaneous with the execution of this Settlement Agreement transferring her interest in the marital resident to the HUSBAND …." (ECF, Docket No. 17).
[5] The testimony of both the Debtor and the Defendant revealed that they essentially agreed to switch living arrangements. The Debtor would be allowed to move back into the marital residence, and the Defendant had the option of moving into an apartment that the Debtor had rented prior to the judgment of divorce.

with an unpaid balance of $25,714.42; and (3) an unpaid lien of the County of Suffolk against the Debtor in the sum of $16,665.84.[6] After reducing the encumbrances on the Premises, the remaining equity was $80,258.95 at the time of the transfer.

In exchange for the Transfer, the Defendant was obliged to continue to pay all of the expenses of the Premises, such as the principal and secondary mortgage on the Premises, the homeowner's insurance, the real property taxes, and expenses for electricity, gas, water, and garbage collection.[7] The Debtor was only required to pay the phone, cable and landscaping expenses. These payments were defined by the Agreement as being part of the Defendant's child support payments. The Defendant was also required to pay the Debtor $600 per month for their son for as long as their son lived with the Debtor.[8]

The Agreement also provided that the Defendant would be the responsible party to pay for the children's college expenses, including room and board, at a college of their choosing. The cost of college applications and summer camp were to be apportioned, with the Debtor paying twenty-five percent (25%) and the Defendant paying seventy-five percent (75%) of these charges.

Regarding the Defendant's medical license, the parties, pursuant to the Agreement, made a decision not to have it appraised, and the Debtor waived her right to appraise it. As an appraisal was never done, the Court cannot place a value on what it may or may not have been worth in economic terms. In exchange for the Debtor making this waiver, the Defendant was required to pay to her one hundred percent (100%) of his 401K plan (valued at $41,645.00), one

---

[6] The unpaid lien from Suffolk County was incurred by the Debtor for the shelter.

[7] The Defendant was also required to make payments of $1,200 per month to the Debtor's rental landlord. The Agreement further provided that if the Debtor were to vacate the Premises, the Defendant would be required to pay her $1,200 per month directly.

[8] The Agreement does note that under the Child Support Standards Act, codified in §240 of the Domestic Relations Law, the child support payments that could have been required were $3,250 per month. However, the parties in the Agreement agreed not to be bound to this amount, and to be bound to the terms and conditions of the Agreement. (ECF, Docket No. 17).

hundred percent (100%) of his pension plan (valued at $24,700.00), and fifty percent (50%) of his TIAA-CREF Account (valued at $23,070.00) for a combined total of $89,415.00 in cash.

The debts of the parties were to be split as follows: the Defendant was to pay the first and secondary mortgage ($170,000.00 and $25,000.00, respectively), a Stony Brook University debt ($5,000.00), a Master Card debt ($10,000.00), a car lease ($8,700.00) and a 401K loan ($11,000.00). The only debt that the Agreement provides that the Debtor pay was a $5,000.00 Visa card debt. (ECF, Docket No. 17).

Upon review of the Agreement, the State Court incorporated it into the Judgment of Divorce that it entered on December 21, 2001, and required that the parties were to comply with every "legally enforcement term and provision of such Agreement." (ECF, Docket No. 18).

The Trustee now seeks to have the Transfer of the Premises from the Debtor to her then spouse, the Defendant, declared a fraudulent conveyance under New York Debtor and Creditor Law §§ 273 and 275. He argues that the transfer of the Debtor's premises was without fair consideration and was done when the Debtor was insolvent, or as a result thereof, lacked sufficient assets to meet her ongoing obligations.

## DISCUSSION

Section 273 of the New York Debtor and Creditor law provides, in pertinent part:

> Every conveyance made … by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made … without a fair consideration.

There are three elements that must be met in order for a party to establish a fraudulent conveyance under Section 273: "(1) the transfer was a conveyance within the meaning of the

statute; (2) the conveyance was made by a person who is or will thereby be rendered insolvent;[9] and (3) the conveyance was made without fair consideration." *Hirko v. United States*, 2006 U.S. Dist. LEXIS 13888 (E.D.N.Y. 2006); *see United States v. McCombs*, 30 F.3d 310, 323 (2d Cir. N.Y. 1994).

It is the third element of fair consideration that the instant case turns on. In order to sustain a complaint under Section 273, the Trustee must prove that the Transfer of the Premises at the time of the transfer was not made for fair consideration. *See Cadle Co. v. Newhouse*, 2002 U.S. Dist. LEXIS 15173 (S.D.N.Y. Aug. 15, 2002); *Hassett v. Goetzmann*, 217 B.R. 9, 15 (N.D.N.Y 1998); Pryor v. Fair, 142 B.R. 628, 632 (Bankr. E.D.N.Y. 1992). If the debtor, who is insolvent or rendered insolvent by the transfer, failed to receive "fair consideration," then the transfer will be deemed to have been a fraudulent one. *See Geltzer v. D'Antona* (*In re Cassandra Group*), 312 B.R. 491, 497 (Bankr. S.D.N.Y. 2004); *Corporation of Lloyd's v. Funk*, 246 A.D.2d 570, 572 (N.Y. App. Div. 2d Dep't 1998).

Fair consideration is defined in Section 272 of the New York Debtor and Creditor law as:

. . . consideration . . . given for property, or obligation:

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount disproportionately small as compared with the value of the property, or obligation obtained.

Whether fair consideration existed under Section 273 for a conveyance must be determined based on the facts of each particular case. *See United States v. McCombs*, 30 F.3d 310, 323 (2d Cir. N.Y. 1994) (stating that fair consideration "defies any one precise formula" and must be

---

[9] Section 271(1) of the New York Debtor and Creditor law defines when a person is considered "insolvent." It states that "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his *existing* debts as they become absolute and matured." (emphasis added).

determined on a case by case basis); *United States SEC v. Universal Express, Inc*., 2008 U.S. Dist. LEXIS 35342 (S.D.N.Y. Apr. 30, 2008); *Pryor v. Fair*, 142 B.R. 628, 632 (Bankr. E.D.N.Y. 1992).

The Court does note that a heavy burden may be placed on the grantee to demonstrate fair consideration, when the challenged conveyance is between family members, such as the Debtor and her ex-husband. *See Cadle Co. v. Lieberman*, 1998 U.S. Dist. LEXIS 23093 (E.D.N.Y. Sept. 8, 1998). This requires one of two factors being present: "(1) the absence of any tangible consideration, or (2) a clandestine transfer of property designed to conceal the nature and value of the consideration." *United States v. McCombs*, 30 F.3d 310, 323 (2d Cir. N.Y. 1994); *see Hirko v. United States*, 2006 U.S. Dist. LEXIS 13888 (E.D.N.Y. 2006). Since there was no statement of an actual transfer of cash from the Defendant to the Debtor on the deed, in exchange for the Debtor's interest in the Premises, the heightened burden on the Defendant has been triggered.

Although the deed evidencing the Transfer of the Premises from the Debtor to the Defendant does not state what consideration was given, and it does not appear that cash was transferred for the Debtor's interest in the Premises, this alone is not dispositive of the issue of fair consideration. A review of the record shows that in exchange for the Debtor waiving her interest in the Premises and transferring them to the Defendant, she was able to live in the marital residence with their children until the occurrence of one of five conditions, while the Defendant would pay the costs and expenses of the Premises. The five possible occurrences agreed to in the Agreement were: (1) the date of August 30, 2010, at which time the Debtor would move out of the Premises; (2) the Debtor voluntarily chooses to vacate the Premises; (3) an unrelated adult

begins to live in the Premises; (4) the Debtor remarried; or (5) the Debtor failed to comply with certain medical obligations.

Additionally, the Defendant agreed to pay for the college expenses of both of their children, regardless of which college was chosen by them. The Debtor did receive a cash payment of $89,415 from the Defendant although it was a negotiated sum based on other assets that could be divided by the parties. When the Debtor conveyed her interest in the Premises to the Defendant, she was acting in good faith pursuant to a duly negotiated and bargained for Agreement that provided the fair consideration for the Transfer, which was then incorporated into an order of divorce from a New York state court. In light of the evidence and a review of all the circumstances and assets of each spouse at the time of the transfer, the Trustee has failed to show that fair consideration was not given.

While there was much discussion at trial regarding whether or not both parties fully disclosed their respective positions and debts, or whether they each fully complied with the terms of the Agreement, the fact remains that the Court has before it a fully negotiated agreement between the Debtor and the Defendant regarding the disposition of the marital assets that was adopted and incorporated into a valid state court judgment of divorce with no showing of collusion or intent to defraud creditors.[10]

A review of case law has shown that it is the rare bankruptcy court that will intrude on a state court divorce judgment and declare a transfer made therein to be a fraudulent conveyance. However, rare does not mean never. If the court, upon review of the conveyance, determines that it was done to defraud creditors or was done for little to no consideration, then the court may make a finding that the transfer was a fraudulent conveyance. *See e.g., Dobin v. Hill (In re Hill)*,

---

[10] *See The Matter of Erlewine*, 349 F.3d 205, 212-13 (5th Cir. 2003) (stating that "the divorce … was fully litigated, without any suggestion of collusion, sandbagging, or indeed any irregularity-should not be unwound by the federal courts merely because of its unequal division of marital property.").

342 B.R. 183, 208 (Bankr. D. N.J. 2006) (holding that the divorce settlement was a fraudulent transfer when it was entered into shortly after a judgment was obtained against the debtor, was disproportionally favorable to the nondebtor, and was designed to frustrate the judgment creditor from collecting on its judgment); *In re Hope,* 231 B.R. 403, 415 (Bankr. D.D.C. 1999) ("[I]t is now well settled that a transfer of property pursuant to a collusive divorce decree or property settlement intended to hinder, delay or defraud creditors (or pursuant to a divorce decree or property settlement for inadequate consideration, leaving the debtor insolvent) constitutes a 'transfer' as defined under § 104(54) of the Bankruptcy Code."); *In re Lawrence G. Williams*, 159 B.R. 648 (Bankr. R.I. 1993).

In *In re Lawrence G. Williams* the debtor had divorced his wife and entered into a divorce settlement agreement with her in which he transferred virtually all of his personal property to her prior to filing for bankruptcy. *See id.* at 663. The bankruptcy court noted that the parties had obtained a divorce in less than two months, and the nature and timing of the divorce evidenced the fact that the divorce settlement agreement was a fraudulent conveyance, and was done with the intent to defraud the debtor's creditors. *See id.*

There has been no allegation of any such fraud or action here. The facts in this case reveals that the divorce proceedings took roughly two years to come to fruition, and the parties were both represented by counsel. Each party negotiated for terms that were beneficial for them, which ultimately resulted in the Agreement which was adopted by the State Court. The negotiated settlement reveals adequate consideration for the Debtor's legal transfer of her interest in the real property. Based on the facts before it, the Court holds that fair consideration did exist for the transfer. Thus, the Trustee is precluded from seeking relief under Section 273 of the Debtor and Creditor law.

As for the Trustee's claim under Section 275 of the New York Debtor and Creditor law, it too requires a finding of the nonexistence of fair consideration in order for the Trustee to prevail. Section 275 provides, in pertinent part, that "[e]very conveyance made … without fair consideration when the person making the conveyance … intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." Since the Court has already determined that there was fair consideration given, it does not need to make a determination regarding the issue of intent. At the time of the transfer, as approved by the judgment of divorce issued by the State Court, there was no set of facts presented to the State Court to indicate that either party believed he or she would not be able to pay for his or her debts as they came due.

Furthermore, based upon the evidence that has been presented to this Court, this Court cannot reach a finding that either party believed he or she would not be able to pay for his or her debts as they came due. What happens to one's life and economic resources after a valid transfer of property should not be ascertained by hindsight.

## CONCLUSION

Based on the above findings of fact and conclusions of law, the Trustee's requested relief is denied.

Dated: Central Islip, New York
       September 29, 2009

                              *s/ Dorothy Eisenberg*
                              Honorable Dorothy Eisenberg
                              United States Bankruptcy Judge